**HERMANN HOSPITAL, Appellant,**

v.

**NATIONAL STANDARD INSURANCE COMPANY and American General Fire & Casualty Company, Appellees.**

No. 01-88-00854-CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 1989.

Rehearing Denied Aug. 10, 1989.

Mark Douglas Herbert, Sullins, Johnston, Rohrbach & Magers, Houston, for appellant.

Larry Funderburk and Kurt Groten, Funderburk & Funderburk, Houston, for appellees.

Before WARREN, COHEN and MIRABAL, JJ.

## OPINION

WARREN, Justice.

This is an appeal from a summary judgment granted against appellant, Hermann Hospital.

Appellant sued appellees, alleging three causes of action: (1) misrepresentation and deceptive trade practices under art. 21.21 of the Texas Insurance Code; (2) negligent misrepresentation under Texas common law; and (3) estoppel. Appellees moved for summary judgment, based on the pleadings, which was granted by the trial court. On appeal, appellant contends that the trial court erred in granting summary judgment as to each of its causes of action.

On June 17, 1978, Jose Carreon was stabbed by a fellow worker while working for his employer, Cafeterias, Inc. d/b/a Romano Cafeteria # 7. He was taken to, and treated at, Memorial Hospital. In September 1978, Memorial Hospital sought to transfer Carreon to Hermann Hospital (appellant) for further care and treatment. Appellees paid Memorial for its services. Three months after Carreon was injured, on September 18 and 20, 1978, and prior to accepting the transfer of Carreon, appellant verified insurance coverage with appellees' agents, employees, or representatives for its care and treatment of Carreon. On September 20, 1978, after verifying coverage, appellant accepted the transfer of Carreon. Appellant again verified insurance coverage with appellees on October 16, 1978. Thereafter, later in October 1978, appellees denied that there was insurance coverage for the injury sustained by Carreon and refused to pay appellant for the expenses incurred. Appellant asserts that it relied on the representation of coverage in accepting the transfer of Carreon and that it incurred expenses of $217,444.90 in its care and treatment of Carreon.

Appellees dispute the nature of their communications with appellant, specifically, whether appellees advised appellant that Carreon had sustained a compensable injury or merely that he was an employee of its covered insured. Appellees contend that they never told appellant that the injury sustained by Carreon was a *compensable* injury, or that they would assume any responsibility for the consequent medical bills. Because this is an appeal from a summary judgment, evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

Appellees moved for summary judgment contending that: (1) appellant did not have standing under the Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann., sec. 17.41 et seq. (Vernon Supp.1989) ("DTPA") or the Texas Insurance Code, art. 21.21 (Vernon 1981); (2) the misrepresentations made by appellees after the sale of the insurance policy to Carreon's employer are "post-loss" misrepresentations and therefore, are not actionable under art. 21.21; (3) there was no legal duty flowing from appellees to appellant; and (4) "estoppel," by itself, is not a viable cause of action.

A defendant who moves for summary judgment has the burden of showing, as a matter of law, that no material issue of fact exists as to the plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). This may be accomplished by showing that at least one element of each of the plaintiff's causes of action has been established conclusively against the plaintiff. *Gray v. Bertrand*, 723 S.W.2d 957 (Tex.1987). Once the defendant has negated, as a matter of law, such elements of plaintiff's cause of action, the plaintiff has the burden of introducing

evidence that raises issues of fact with respect to the elements negated by the defendant's summary judgment evidence. *Federated Dep't Stores, Inc. v. Houston Lighting & Power Co.*, 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ). As the summary judgment order does not state the specific grounds upon which it is granted, appellant must show that each of the independent arguments alleged in the motion is insufficient to support the order. *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

■ We first address appellant's argument under the Texas Insurance Code, which requires us to decide whether appellant has standing to bring a cause of action, under art. 21.21, sec. 16(a) of the Texas Insurance Code Annotated. In its first point of error, appellant complains that the trial court erred in rendering summary judgment against it, and in dismissing its claim under the art. 21.21 of the Texas Insurance Code. Specifically, appellant argues that: (1) it is not required to establish "consumer" status to obtain standing under art. 21.21, as argued by appellees in their motion for summary judgment[1]; (2) appellees' violations of art. 21.21 were actionable deceptive or unfair acts or practices; and (3) appellant has a private cause of action for appellees' violation of State Board of Insurance Rules and Regulations.

In its second amended petition, appellant asserted a cause of action against appellees for unfair or deceptive acts or practices pursuant to Tex.Ins.Code Ann. art. 21.21.:

Sec. 16(a) *Any person who has been injured by another's engaging* in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in

the business of insurance or *in any practice defined by Section 17.46 of the Business and Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.*

(Emphasis ours). Appellant alleged that it was a corporation and argues that sec. 16(a) provides a remedy for "any person" injured by the conduct of one in the insurance business. Person is defined in section 2 of the Act:

Sec. 2. When used in this Act:

(a) "Person" shall mean any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds insurer, fraternal benefit society, and any other legal entity engaged in the business of insurance including agents, brokers, adjusters and life insurance counselors.

The Texas Supreme Court, in 1978, held that this statute does not require that the injured party be a person who is engaged in the business of insurance. *Ceshker v. Bankers Commercial Life Ins. Co.*, 568 S.W.2d 128, 129 (Tex.1978). More recently, it held that the statute does not require the injured party be a consumer of goods or services before he can recover under this statute. *Aetna Casualty & Surety Co. v. Marshall*, 724 S.W.2d 770, 772 (Tex.1987). Nevertheless, appellees contend appellant has no standing, citing *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), in which the court found no authority for extending the construction of "person" beyond one who is either an insured or a beneficiary of the policy. We find that case distinguishable on its facts.

In *Chaffin*, the owners of two townhomes, damaged during a rainstorm, sued the sub-contractor that waterproofed the townhome roofs, for negligence, after the

---

1. We have read appellant's second amended petition and find that it did not allege an action under the DTPA. Art. 21.21, sec. 16(a) of the Insurance Code provides a cause of action to persons injured by the misrepresentations and deceptive trade practices of persons in the insurance business. One source of actionable conduct is sec. 17.46 of the Tex.Bus. & Com.Code (DTPA). Appellant cited to the DTPA only as a definitional source for determining what constitutes an unfair or deceptive act or practice that is actionable by any person under art. 21.21, sec. 16.

sub-contractor's insurance company had denied coverage. Before the summary judgment was granted, the insurance company admitted no reason existed for its denial of coverage, and over three years from the date of loss, paid the plaintiffs the limit of the sub-contractor's liability policy. The suit against the sub-contractor was dismissed, but the plaintiffs continued their suit against the insurance company for wrongful denial and tortious handling of the property claim. The suit was to recover the unnecessary litigation costs incurred by plaintiffs and interest on the money borrowed to repair the property until the settlement was had. Under these facts, the court of appeals found no reason to extend standing to the plaintiffs under the Insurance Code, as it did not find Texas authorities that recognized a cause of action for the type of damages being sought, and because Texas law prohibits joinder of, or a direct action against, a tortfeasor's insurance company until after the injured party has secured a judgment against the insured. *Chaffin*, 731 S.W.2d at 731–732.

This is not the case before us now. Hermann Hospital is not suing on an insurance policy or for the wrongful denial of payment under Romano's worker's compensation insurance policy. It is suing for the damages it suffered by relying on the representations of coverage allegedly made by appellees. The supreme court has held that misrepresentations as to coverage and benefits are precisely the sort of conduct that give rise to a cause of action under this section. *Aetna*, 724 S.W.2d at 772. We find that as a practical matter, the relationship between insurance companies and providers of health care is a direct one, with the health care provider acting in reliance on the representations of coverage made by the carriers. Hospitals and other health care providers must, and do, rely upon the insurance carriers representations of coverage in making their decisions regarding admission of potential patients. If insurance coverage and benefits can be verified, the hospital will usually accept an assignment of benefits to insure it is paid for any services rendered. If insurance coverage and benefits cannot be verified,

or if no coverage exists, the medical provider can then make alternative financial arrangements. To insulate the insurance carriers from liability leaves the medical care provider without recourse against the party causing its damage, if it acts in reliance on the representation of coverage. Had the insurance carrier not falsely or negligently provided information, appellant could have sought alternative means to ensure that it received payment for services before rendering them.

Appellees also argue that sec. 1(a) of art. 21.21 limits the class of persons who have standing under this article to those in the insurance business, and ask us to disregard contrary holdings by the Texas Supreme Court. We decline to do so. Sec. 1(a) states the purpose of this act is to "regulate trade practices in the business of insurance in accordance with the intent of Congress ... by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Nothing in this statement of purpose limits the act to the regulation of the insurance business to members therein. In fact, sec. 1(b) states that this article "shall be liberally construed and applied to promote its underlying purposes as set forth in this section." One of the stated purposes of the act is to prohibit unfair trade practices in the business of insurance. Appellant has alleged that appellees, insurance companies, engaged in activities that sec. 16 of this article declares unlawful deceptive trade practices, and that these activities injured appellant. We find no reason to prohibit appellant's right to bring suit under the provisions of this article.

Appellant's first point of error is sustained.

In its second point of error, appellant complains that the trial court erred in granting summary judgment on its cause of action for negligent misrepresentation.

■ Appellees moved for summary judgment as to this cause of action on the

ground that the summary judgment evidence established the absence of an element of the cause of action: that appellees owed a legal duty to appellant. In support of this contention, they argue first that they render a gratuitous service when verifying insurance coverage and thus, cannot be held to owe a legal duty to those seeking information. But, in *Great Am. Mortgage Investors v. Louisville Title Ins. Co.*, 597 S.W.2d 425, 430 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.), recognizing that a cause of action for negligent misrepresentation exists in Texas, the court stated: "It is well settled that even though one does not have a duty to act, if one acts voluntarily, he must do so with due care and is generally liable for negligence." Therefore, the fact that this service is gratuitous does not negate the legal duty owed by appellees to those for whom they verify coverage.

■ Second, appellees claim that there is no privity of contract between the parties, as appellant is not a party to the insurance contract, and thus, they owed no legal duty to appellant. We disagree. Actionable negligence presupposes the existence of a legal relationship between the parties through which the wrongdoer owed a duty to the injured party. *Bennett v. Span Indus., Inc.*, 628 S.W.2d 470, 473 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). "This duty may be imposed by contract or, *irrespective of privity of contract*, by law." *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 234 (Tex.App.—Dallas 1985, writ ref'd. n.r.e.) (emphasis added). Thus, although contractual privity assures a sufficiently close nexus between the parties upon which we may fairly predicate liability, it is not, as appellees argue, indispensable to the imposition of a legal duty of care. *Cook*, 700 S.W.2d at 234.

Section 552 of the Second Restatement of Torts (1977), recognizing this proposition, provides for imposition, by law, of liability for negligent misrepresentation. Section 552 provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered: (a) by the person, or one of a limited group of persons, for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it. . . .

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Liability under section 552 is limited to persons (1) whom the maker of the representation intends to benefit, or (2) to a limited group of persons for whose benefit the maker intends to supply the information or knows that the recipient intends to supply it. In *Cook*, the court applied section 552 to hold that a purchaser of a house could recover from the surveyor who negligently prepared a completion survey under a contract with the builder of the home. The purchaser bought her house partly in reliance on a survey that indicated that the house lay within the boundaries of the lot. Later the purchaser was sued for encroachment on an adjoining lot and was forced to demolish the house in order to remove the encroachment. In a suit by the purchaser against the surveyor for negligent misrepresentation, the court of appeals cited the following factors as considerations in determining whether the duty described in section 552 is owed in a particular case: (1) the extent to which the transaction was intended to affect the plaintiff; (2) foreseeability of harm to the plaintiff; (3) the closeness of the connection between the defendant's conduct and the injury suffered; and (4) the potential liability. *Cook*, 700 S.W.2d at 234–35. The court stated that "since the very purpose of the survey was, ultimately, to facilitate purchase of the house, the

[purchaser's] injury was forseeable, and public policy dictates imposition of a duty of care [by the surveyor] to the purchaser." *Cook*, at 236.

In *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), the Dallas Court of Appeals considered the proper interpretation of section 552 in a suit brought against an accounting firm for negligent misrepresentation, fraud, breach of warranty, and breach of fiduciary duty. Blue Bell was a trade creditor of a corporation for whom the accounting firm had prepared financial statements and an accountant's report. The documents were furnished, by the client corporation, to the plaintiff, which relied upon them in furnishing substantial amounts of credit. The accounting firm obtained a summary judgment in the trial court on each cause of action. The court of appeals reversed the summary judgment and remanded Blue Bell's negligent misrepresentation cause of action for trial on the merits. *Blue Bell*, 715 S.W.2d at 411–15.

After reviewing section 552 and prior Texas precedent, the court determined that Blue Bell, Inc. was within the "limited group" of persons described in section 552, and expressed its holding as follows:

> We hold that if, *under current business practices and the circumstances of that case*, an accountant preparing audited financial statements *knows or should know* that such statements *will be relied upon by a limited class* of persons, the accountant may be liable for injuries to members of that class relying on the audited reports.

*Blue Bell*, 715 S.W.2d at 412 (emphasis added in part).

■ Under *Cook* and *Blue Bell*, liability is extended to the persons or class of persons whom the maker of the representation intends to benefit or who foreseeably may be expected to act in reliance on it. An insurance carrier is not immune from liability for negligent verification of coverage when each element of a cause of action is alleged. Based on the record before us, we find that appellant sufficiently alleged the necessary elements of a cause of action for negligent misrepresentation. Appellant alleged that it is the current business practice in the health industry for providers of medical care to verify insurance coverage before accepting patients for treatment, and that appellees should have known that appellant would rely on its representations of coverage in deciding whether to accept Carreon for treatment. Therefore, appellant alleges its injury was readily foreseeable. We find that the facts alleged provide a close enough nexus between appellees' conduct and appellant's injury to provide a predicate for liability. As appellant claims that appellees did verify Carreon had a *compensable* injury, and appellees dispute this fact, we find that a material issue of fact exists as to appellant's negligent misrepresentation claim, and the trial court erred in granting summary judgment.

Appellant's second point of error is sustained.

In its third point of error, appellant complains that the trial court erred in granting summary judgment and dismissing its estoppel cause of action. Appellees argue that estoppel is not a cognizable cause of action, but only an equitable remedy to prevent the assertion of certain claims or defenses, and furthermore, that estoppel cannot be used to expand or extend insurance coverage beyond the express terms of an insurance contract.

■ We agree that estoppel is not an independent cause of action. Estoppel is defensive in character, and its function is to preserve rights, and not to bring into being an independent cause of action. *Ex parte Owens*, 605 S.W.2d 709, 711 (Tex.Civ. App.—Dallas 1980, no writ); *Kroger Co. v. Demakes*, 566 S.W.2d 653, 658 (Tex.Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *Traylor v. Gray*, 547 S.W.2d 644, 652 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Although estoppel cannot be maintained as an independent cause of action, appellant is not precluded from pleading estoppel as an affirmative defense in response to appellees' denial of coverage pursuant to appellant's other causes of action.

The judgment is reversed, and the cause remanded.