**PARKSIDE LUTHERAN HOSPITAL,**
**Plaintiff,**

v.

**R.J. ZELTNER & ASSOCIATES, INC.**
**ERISA PLAN and Blue Cross & Blue**
**Shield of Ohio, Defendants.**

**No. 91 C 3070.**

United States District Court,
N.D. Illinois, E.D.

March 24, 1992.

Norman E. Goldman, Leonard D. Saphire–Bernstein, Albert Speisman, Denise M. Sircher, Nicola J. Bowkett, Albert Speisman & Associates, Highland Park, Ill., for Parkside Lutheran Hosp.

Joseph Michael Gagliardo, Neil P. Stern, James J. Convery, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, Ill., for Blue Cross and Blue Shield of Illinois, Blue Cross & Blue Shield of Ohio and R.J. Zeltner & Associates, Inc. ERISA Plan.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff, PARKSIDE LUTHERAN HOSPITAL ("PARKSIDE"), filed suit to recover unpaid medical bills that it incurred for the treatment of one of the Defendants' insureds. Defendant, BLUE CROSS & BLUE SHIELD OF OHIO ("BLUE CROSS"), has moved to dismiss all three counts of Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, we dismiss Count I of Plaintiff's Amended Complaint with prejudice and dismiss Counts II and III with leave to amend.

## BACKGROUND [1]

Sometime during the fall and winter of 1987, Linda Zeltner was admitted to Parkside Lutheran Hospital for medical care. While at the hospital Linda Zeltner incurred hospital and medical charges of at least $23,372.68. (Pl.'s Am.Comp. Count I ¶ 8.)

During her hospital stay Linda Zeltner had health insurance coverage through an ERISA plan as a dependent of a covered employee. (*Id.* ¶ 6.) BLUE CROSS was a fiduciary under this ERISA plan. (*Id.* ¶ 7.)

On October 28, 1987, a PARKSIDE employee contacted the ERISA plan and confirmed that Linda Zeltner had health benefit coverage under that plan. (*Id.* Count II ¶ 12.) When she was admitted to PARKSIDE, Linda Zeltner and her husband Robert Zeltner executed an assignment of benefits to PARKSIDE. (*Id.* Count I ¶ 9.) This assignment was intended to transfer their rights under their ERISA plan to PARKSIDE for reimbursement for Linda Zeltner's hospital and medical expenses. (*Id.*)

Pursuant to the apparent assignment of benefits, PARKSIDE sent the bill for Linda Zeltner's hospital and medical expenses, which totalled $23,372.68, to the address specified by the ERISA plan and BLUE CROSS. (*Id.* ¶ 10.) The Defendants paid $11,146.68, but have refused to pay the balance of the bill ($12,226.00). (*Id.* ¶ 11.) PARKSIDE filed suit in state court to recover this amount. BLUE CROSS removed the claim to federal court on the grounds that the claim necessarily rests on the Employee Retirement Income Security Act (ERISA).

In Count I of Plaintiff's Amended Complaint, PARKSIDE asserts its rights as assignee of the ERISA plan to the contractual benefits of that plan. Count II contains a claim for equitable estoppel; Count III, for negligent misrepresentation.

---

**1.** On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981).

## ANALYSIS

In their Motion to Dismiss,[2] the Defendant BLUE CROSS contends that the Court lacks subject matter jurisdiction over this case because Linda Zeltner's health benefit plan clearly states that beneficiaries may not assign their benefits to others, and therefore, PARKSIDE cannot properly maintain a suit based on the plan against BLUE CROSS. (Def.'s Mot.Dis. at 2.) BLUE CROSS also argues that the claims of equitable estoppel and negligent misrepresentation (Counts II and III) are pre-empted by ERISA and, therefore, are unmaintainable. (*Id.*) We address the Defendant's challenge to the assignment first.

### A. *Assignment Under the Plan*

■ The Seventh Circuit has recently stated that subject matter jurisdiction is present where a health care provider that is an assignee of an ERISA plan participant has a colorable claim to benefits. *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991). The question before us is whether PARKSIDE has a colorable claim to benefits of Linda Zeltner's plan.

The plan at issue states:

*Payment of Benefits*

You authorize us to make payments directly to Providers who have performed Covered Services for you. We also reserve the right to make payment directly to you; *you cannot assign your right to receive payment to anyone else.* The choice of a Provider is solely yours. Once a Provider performs a Covered Service, we will not honor your request for us to withhold payment of claims submitted.

(Def.'s Mot.Dis. Exhibit B (Subscriber Certificate for the Policy of R.J. Zeltner & Assoc., Inc.) at 25 (emphasis added)). The Seventh Circuit stated in *Kennedy*, "Because ERISA instructs courts to enforce strictly the terms of plans, an assignee cannot *collect* unless he establishes that the assignment comports with the plan. . . ."

Only if the language of the plan is so clear that any claim as an assignee must be frivolous is jurisdiction lacking." *Kennedy*, 924 F.2d at 700 (emphasis in the original) (citations omitted). We find that the language of Linda Zeltner's plan clearly prohibited any assignment, hence PARKSIDE has no colorable claim to benefits under the plan.

PARKSIDE would have us believe that this non-assignment language in the plan cannot be enforced against health care providers and that, in the alternative, the intent of the parties regarding assignment of benefits is unclear. (Pl.'s Response at 2–3).

Two decisions rendered after the briefing of this motion, however, make clear that non-assignment language in ERISA plans can be enforced against health care providers. *Davidowitz v. Delta Dental Plan of Cal.*, 946 F.2d 1476 (9th Cir.1991) ("The court concludes that ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); *Washington Hosp. Ctr. Corp. v. Group Hospitalization and Medical Services*, 758 F.Supp. 750, 755 (D.D.C.1991) ("ERISA does not on its face appear to embody any policy in favor of attorney's fees for assignees so strong as to invalidate the anti-assignment clause.") Indeed, the Eighth Circuit recently held that a state statute prohibiting non-assignment clauses was pre-empted by ERISA. *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp.*, 947 F.2d 1341 (8th Cir.1991). In reaching this conclusion, the court found it important that the plan administrator be permitted to control who should receive plan benefits: "By negating a non-assignment clause, the assignment statute takes from the claims administrator who is a plan fiduciary, and gives to the beneficiaries control over who should receive payment of ERISA-plan welfare benefits." *Id.* at 1346 (citations omitted).

Moreover, we do not agree that the plan language is unclear respecting the parties' intent concerning the assignment of bene-

---

**2.** The instant motion to dismiss is the second motion to dismiss that has been filed by BLUE CROSS in this action. The first, which chal-

lenged in personam jurisdiction and venue, has apparently been abandoned. (Pl.'s Response to Def.'s [Second] Mot.Dis. the Am.Comp. at 1.)

fits to health care providers. The plan unequivocally states, "you cannot assign your right to receive payment to *anyone else*." (emphasis added). As the Ninth Circuit recently stated in a similar case, "[a]s a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions." *Davidowitz*, 946 F.2d at 1478 (citations omitted).

Because we find that Linda Zeltner's plan precluded her from assigning her benefits to PARKSIDE, we conclude that PARKSIDE has no colorable claim to benefits as required under *Kennedy* and consequently this court lacks subject matter jurisdiction over Count I of this claim. Hence, we dismiss Count I of Plaintiff's Amended Complaint.

### B. *State Law Claims*

BLUE CROSS contends that PARKSIDE's claims based on equitable estoppel and negligent misrepresentation are preempted by ERISA. (Def's Mot.Dis. at 2.) PARKSIDE's Amended Complaint does not state whether its claims for equitable estoppel and negligent misrepresentation are based on state law or federal common law. However, we assume based upon the representations Plaintiff has made in subsequent filings that these claims are predicated solely on state law.[3]

Quoting the text of § 514(a) of ERISA, the Supreme Court has stated,

> If a state law "relate[s] to ... employee benefit plan[s]," it is preempted. The savings clause excepts from the preemption clause laws that "regulate insurance."

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The issue that confronts us here is whether state law claims by health care providers not asserted pursuant to an assignment of rights "relate to" an ERISA plan and, as a consequence, are preempted.

In *Pilot Life*, the Court held that ERISA preempts all state common law causes of action based on the alleged improper processing of a claim for benefits. As this Circuit has subsequently noted, "ERISA's preemptive power remains virtually undefeated." *Maciosek v. Blue Cross & Blue Shield*, 930 F.2d 536, 539 (7th Cir.1991). However, courts have recognized that where the plaintiff is a third-party health care provider there are certain situations in which preemption will not occur.

In *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990), the Fifth Circuit found that a hospital's claim against the employer of one of its patients and that employer's group health insurer for negligent misrepresentation was not pre-empted by ERISA. The court stated:

> We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect—or affect only tangentially—the ongoing administration of the plan.

*Id.* at 250. The court noted that ERISA pre-emption is generally found in actions which have one of two characteristics, "(1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan

---

**3.** The Amended Complaint does not state whether Counts II and III arise under state law or federal common law. Defendant BLUE CROSS pointed out this lack of clarity in its motion to dismiss. (Def.'s Mot.Dis. at 2) ("Counts II ... and III ... fail to state any jurisdictional basis for their inclusion in the Amended Complaint. However, because this suit seeks to enforce rights under an ERISA plan, it is well established that they are pre-empted by ERISA, regardless of whether they are predicated upon state or federal law." (citation omitted).) In its response to Defendant's motion, the Plaintiff failed to clarify the basis for its claim, or to assert the basis for this Court's jurisdiction over these counts. Instead, Plaintiff's response relies on caselaw concerning state law claims; hence, we find that Plaintiff has waived any federal common law claims and seeks to assert only state law claims of equitable estoppel and negligent misrepresentation.

and its fiduciaries, and the participants and beneficiaries." *Id.* at 245. It held that neither of these characteristics was present when a health care provider brought an action based on its status as an independent third-party provider. The court found that a claim of misrepresentation concerning the existence of coverage was "independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations." *Id.* at 250.

The Tenth Circuit recently followed this reasoning in *Hospice of Metro Denver v. Group Health Ins.,* 944 F.2d 752 (10th Cir. 1991). In that case the plaintiff did not claim any breach of the plan contract but only asserted a promissory estoppel claim. Finding that the state law claim did not affect the relations among the parties to the plan, it noted "[a]n action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the plan." *Id.* at 756. It held, "[d]enying a third-party provider a state law action based upon misrepresentation by the plan's insurer in no way furthers the purpose of ERISA." *Id.*

Instead of this line of authority, Defendants would have us rely on a recent Sixth Circuit Court of Appeals decision, *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991).[4] *Cromwell* involved an action brought by a health care provider alleging, among other things, claims of promissory estoppel, negligence, and breach of good faith. Apparently the health care provider in *Cromwell,* like PARKSIDE in the instant case, contacted the insurer to verify coverage and, once such verification was obtained, provided services for which it was never paid. In *Cromwell* the insurer refused to pay because it had discovered that the patient in question was no longer covered under the plan. The Sixth Circuit found that the plaintiff's allegations were asserted "as

grounds for the recovery of benefits from the ... plan for health care services...." *Id.* at 1276. Because it found that these claims were asserted to recover under the plan itself, the court held that "appellants' state law claims are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan." *Id.*

■ We are unpersuaded, however, by *Cromwell* that state common law claims of the sort at issue here are asserted in order to recover benefits from an ERISA plan itself. Instead, we agree with the dissenting Judge Jones that where the grounds for the state law claims are representations made by the insurer to the health care provider directly, these representations may create duties quite apart from those under the plan. *Id.* at 1285 (Jones, J. dissenting). Thus, we find that where alleged representations create duties that exist outside of those encompassed in an ERISA plan and that do not interfere with duties contained in that plan, ERISA preemption will not occur.

■ However, where the representations made by an insurer to a third-party provider would act to modify the terms of a group insurance plan—e.g., to allow receipt of benefits that were no longer available under the explicit terms of the plan—the third-party's claim does "relate to" the plan and hence is preempted by ERISA. *Coonce v. Aetna Life Ins. Co.,* 777 F.Supp. 759 (W.D.Mo.1991). In *Coonce* the court stated,

This is not a case where the health care provider simply called the plan administer to verify that a prospective patient had coverage, as was the case in *Memorial Hospital.* Rather, this case involves a series of discussions that took place for the express purpose of determining whether [the insured] would continue to receive benefits.... Taken in their entirety, the representations defendants are alleged to have made would have

---

**4.** The Defendant BLUE CROSS brought this case to our attention in a supplemental brief filed

only a few days before we were scheduled to rule on its motion to dismiss.

modified the plan by allowing [the insured] to receive benefits which were no longer available to plan participants....

*Id.* at 768. Because the conversations at issue in *Coonce* had the effect of orally modifying the express terms of the ERISA plan, they related to the plan and, as a consequence, were preempted by ERISA.

These cases suggest that in an action for misrepresentation, the claim's relation to the plan depends on the nature of the representation: if it was merely involving a verification of coverage and, quite apart from the policy itself, created a duty between insurer and provider, the plan is not involved and the action does not "relate to" the plan; however, if the conversations concerned the nature of the coverage under the plan—e.g., whether an illness was a pre-existing condition or whether a given procedure was covered under the policy— they do "relate to" the plan for ERISA preemption purposes.

With this in mind we turn to the Amended Complaint. In that complaint, Plaintiff states:

12. On October 28, 1987, an employee of the Plaintiff contacted the ERISA plan and confirmed health insurance benefits for Mrs. Zeltner.

13. In confirming health insurance benefits for Mrs. Zeltner, the ERISA plan represented to Parkside that Mrs. Zeltner's hospital expenses would be covered by the ERISA plan, subject only to facts it neither knew nor should have known through reasonable inquiry.

(Pl.'s Am.Comp. ¶¶ 12–13.) We find these paragraphs unclear as to the nature of the alleged representations. Paragraph 13 does not make clear whether the ERISA plan in fact made an express representation to PARKSIDE that the expenses were covered under the plan or merely confirmed coverage, which PARKSIDE took to mean that the particular hospital expenses it was contemplating incurring were covered. Because the preemption issue turns on whether the representations modified the terms of the plan and because the language as drafted is unclear on this point, we dismiss Counts II and III of Plaintiff's Complaint and give them leave to amend. We note, however, that if Plaintiff fashions a claim that is not preempted by ERISA, this Court will be forced to remand the remaining state law claim to state court since we lack jurisdiction to entertain such a claim.[5]

## CONCLUSION

We hereby dismiss Count I of Plaintiff's Amended Complaint with prejudice and dismiss Counts II and III with leave to amend.

---

5. As Defendant points out, see *supra* note 3, Plaintiff has neglected to specify in Counts II and III the basis for our jurisdiction. However, given the nature of Count I, we assumed for the purposes of this motion, that jurisdiction was predicated upon the pendency of the state claim. Now that we have dismissed Count I, this court lacks jurisdiction to determine non-preempted state law claims given that no basis for diversity has been asserted and the jurisdictional amount has not been reached.